**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jane Doe, et al.,

Plaintiffs,

v.

Lyft Incorporated, et al.,

Defendants.

No. CV-26-04231-PHX-DWL

**ORDER**

On April 7, 2026, Jane Doe (A.P.) and Jane Doe (C.H.) (together, "Plaintiffs") filed a complaint in Maricopa County Superior Court, naming Lyft, Inc. ("Lyft") and Nathaniel Carnell Johnson ("Johnson") as the two defendants. (Doc. 1-3 at 2-30.) The complaint alleges that Jane Doe (A.P.) is a resident of Arizona; that Jane Doe (C.H.) is a resident of Ohio; that Lyft is organized under the laws of Delaware and has its principal place of business in California; and that Johnson is a resident of Arizona. (*Id.* at 11 ¶¶ 31-35.)

On April 24, 2026, Lyft was served. (Doc. 1 ¶ 2; Doc. 1-3 at 32-34.)

On May 14, 2026, Johnson was served. (Doc. 1 ¶ 3; Doc. 1-3 at 36.) The affidavit of service indicates that Johnson was served at a residence in Nevada. (Doc. 1-3 at 36.)

On June 15, 2026,[1] Lyft filed a notice of removal, identifying diversity jurisdiction as the sole jurisdictional basis for removal. (Doc. 1 ¶¶ 1-17.) In the removal notice, Lyft

[1] The affidavit of service was filed on May 15, 2026. (Doc. 1-3 at 48.) The notice of removal was filed 31 days later, on Monday, June 15, 2026, which is the first business day following the 30-day deadline to remove. The timeliness of the removal is not at issue in the parties' briefs.

alleges that complete diversity exists because Plaintiffs are citizens of Arizona and Ohio, Lyft is a citizen of Delaware and California, and Johnson is a citizen of Nevada. (*Id.* ¶¶ 11-15.) Lyft avows that on May 21, 2026, it "was made aware" that Johnson is, in fact, a citizen of Nevada and that the allegation in the complaint regarding Johnson's purported Arizona residence was inaccurate. (*Id.* at 5 n.2.) Lyft also avows that Johnson consented to removal and provides evidence of his consent. (Doc. 1 ¶ 17; Doc. 1-3 at 50.)

Now pending before the Court is Plaintiffs' motion to remand. (Doc. 9.) The motion is narrow—Plaintiffs only dispute whether Johnson is, in fact, a citizen of Nevada, arguing that Lyft "filed a Notice of Removal based exclusively on information contained in the Affidavit of Service and Consent to Removal" but "Lyft has not received any pleading or paper that actually indicates, much less establishes, Johnson is a citizen of Nevada," as these materials merely reflect that Johnson was served while at a residence in Nevada and "say[] nothing about Johnson's domicile at the time the complaint was filed." (*Id.* at 5-6.) Plaintiffs add: "Absent facts that demonstrate Johnson is physically present in Nevada *and* has the intent to remain there, complete diversity is not established." (*Id.* at 7.) In response, Lyft reiterates its allegation in the removal notice that Johnson is a citizen of Nevada. (Doc. 12.) Lyft also encloses, as an attachment, a declaration from Johnson avowing that he moved from Arizona to Nevada in July 2025, has continuously maintained his physical residence and home in Nevada since then, was issued a Nevada driver's license on July 8, 2025, and intends to remain in Nevada indefinitely and permanently. (*Id.* at 8.) The time to file a reply has expired and Plaintiffs did not file a reply.

The party seeking to invoke diversity jurisdiction has the burden of proof. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Diversity jurisdiction exists when there is complete diversity of citizenship between the plaintiffs and the defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332. "[T]raditional diversity cases under § 1332(a) . . . require complete diversity (i.e., each plaintiff is a citizen of a different state than each defendant) . . . ." *Chan Healthcare Grp., PS v. Liberty Mutual Fire Ins. Co.*, 844 F.3d 1133, 1137 (9th Cir. 2017). "To be a citizen

of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858-59 (9th Cir. 2001) (citations omitted). "[T]he existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed." *Lew*, 797 F.2d at 750.

"A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations. . . ." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (cleaned up).

Because Lyft "provided a short and plain statement alleging that" Johnson is a citizen of Nevada, "its jurisdictional allegations were sufficient—at least in the absence of a factual or as-applied challenge." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019). *See also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) ("[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged."). Thus, Lyft would survive a facial attack on its jurisdictional allegations. *Leite*, 749 F.3d at 1122.

"But plaintiffs have raised a factual attack by contesting the truth of [Lyft's] allegations" regarding Johnson's citizenship, and "[b]ecause plaintiffs have raised a factual attack on [Lyft's] jurisdictional allegations, [Lyft] must support its allegations with competent proof." *Id.* A party raising a factual attack need not "introduce evidence outside the pleadings"—instead, the challenger may simply "challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). Here, Plaintiffs made a reasoned argument as to why Lyft's assumptions regarding Johnson's citizenship are not supported by the evidence upon which Lyft relied (i.e., the affidavit of service and consent to removal) when filing the removal

notice. Thus, Lyft must provide evidence that Johnson is "more likely than not" a citizen of Nevada. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

"[A] person's old domicile is not lost until a new one is acquired." *Lew*, 797 F.2d at 750. "A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.*

> [T]he determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. . . . [D]omicile is evaluated in terms of objective facts, [such] that statements of intent are entitled to little weight when in conflict with facts.

*Id.* (cleaned up). There is a "presumption in favor of [an] established domicile . . . as against [an] allegedly newly acquired one." *Id.* at 751.

As an initial matter, it is unclear whether Lyft's theory is that Johnson experienced a *change* in domicile in July 2025 upon his move to Nevada—a scenario that, as discussed above, would trigger a presumption in favor of the established domicile. In its response to the motion to remand, Lyft disputes whether "Johnson ever had an intent to make Arizona his 'permanent abode.'" (Doc. 12 at 2.) Perhaps this argument was meant to suggest that Johnson has always been a citizen of Nevada and was simply residing in Arizona on a temporary basis at the time of the underlying incident in May 2025. However, Lyft does not develop that argument in any depth and provides no information about Johnson's activities and whereabouts before 2025. On the other side of the ledger, the complaint alleges that on May 17, 2025, Johnson, an Arizona resident and Lyft driver working in Arizona, was driving "his Toyota Prius, Arizona license plate 3XA8TT and Vehicle Identification Number JTDKBRFUOG3021988, owned by him," when he was dispatched by Lyft to provide Plaintiffs with a ride from Scottsdale, Arizona to Tempe, Arizona. (Doc. 1-3 at 11-13 ¶¶ 35, 41-42.) Johnson did not affirmatively deny any of these allegations in the relevant portions of his answer (Doc. 1-3 at 40-41) and acknowledges in his declaration that he resided in Arizona from the summer of 2024 to July 2025 (albeit while denying that

he ever held an Arizona driver's license) (Doc. 12 at 8).

Given this backdrop, the Court assumes that Johnson was a citizen of Arizona (or of some other state that is not Nevada) before July 2025 and that Lyft's theory is that Johnson acquired Nevada citizenship in July 2025 upon moving there. Thus, the presumption in favor of the earlier domicile applies and Lyft has both the burden of production and the burden of proof: Lyft must "produce enough evidence to substantiate [its] claim of a change in domicile to withstand a motion for directed verdict." *Lew*, 797 F.2d at 751.

Lyft's sole evidentiary proffer is Johnson's declaration, in which Johnson avows that he moved to Nevada in July 2025, has continuously resided in Nevada since July 2025, obtained a Nevada driver's license in July 2025, and intends to remain in Nevada permanently. (Doc. 12 at 8.) On the one hand, this is a relatively weak showing. Lyft does not provide evidence regarding most of the "[t]angible factors" that courts consider when evaluating domicile, *Safieddine v. MBC FZ, LLC*, 2021 WL 2551596, *1 (C.D. Cal. 2021), such as Johnson's voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions or other organizations, place of employment or business, automobile registration, or payment of taxes. *Lew*, 797 F.2d at 750. Johnson also does not provide a copy of his Nevada driver's license. And although Johnson includes an avowal regarding his intent to permanently remain in Nevada, courts have expressed skepticism that such avowals are alone sufficient in this context. *See, e.g.*, *D.C. v. Murphy*, 314 U.S. 441, 456 (1941) ("One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts."); *V.I.P. Mortg. Inc. v. Gates*, 2025 WL 1904428, *2 (D. Ariz. 2025) ("Defendants are advised that if they merely submit affidavits expressing that on April 2, 2025, they possessed 'the requisite intent to remain indefinitely' in Mexico, such affidavits standing [alone] will not be enough to rebut the presumption that their established domicile

remains in Arizona. Rather, to meet their burden, Defendants must come forward with evidence establishing objective facts.") (cleaned up); *Sabbag v. Hart*, 2020 WL 6140306, *2 (C.D. Cal. 2020) ("The Court does not end its analysis and rely solely on Plaintiff's statements of domiciliary intent [in Massachusetts]. Instead, the Court approaches these statements with some skepticism because federal jurisdiction is at issue here, and because Plaintiff's statements are contradicted by objective facts indicating her domicile in California.").

On the other hand, Johnson's declaration does contain avowals regarding two of the objective factors that the Ninth Circuit has deemed relevant in this context—namely, "current residence" and "driver's license." *Lew*, 797 F.2d at 750. And as to the latter factor, one court has suggested that the possession of a Nevada driver's license is a particularly good proxy for Nevada citizenship. *Bayeh v. Crow*, 2025 WL 707531, *2 (D. Nev. 2025) ("The Court finds that Defendant's Nevada driver's license is a key indicator of his intent to remain in Nevada.").

For these reasons, the jurisdictional analysis presents a somewhat close call. Despite bearing the burden of proof and needing to overcome not only the presumption in favor of the earlier domicile but also the "strong presumption"[2] against removal jurisdiction generally, *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992), Lyft offers only a bare-bones declaration from Johnson that fails to address the great majority of the relevant factors that courts often consider when evaluating domicile. With that said, there is no rule that a party must address all, or even some minimum subset, of those factors. *Baum v. Platinum Nine Holdings, LLC*, 2025 WL 3237500, *5 (W.D. Wash. 2025) ("Plaintiff incorrectly states that citizenship is determined upon a multi-factor analysis, wherein courts will analyze several factors, including current residence, voting information, location of property, location of brokerage and bank accounts, location of spouse and family, place of

[2] The "strong presumption" against removal in "mine-run diversity cases" was not altered by *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81 (2014), which addressed removal of class actions under the Class Action Fairness Act. *Dart*, 574 U.S. at 89; *see also Johnson v. Twin City Fire Ins. Co.*, 2015 WL 1442644, *2 n.2 (D. Ariz. 2015).

employment, driver's license and automobile registration, payment of taxes, and membership in unions or other organizations. Not so. Assuming Mr. Smith is a United States citizen (which is not in dispute), his citizenship depends only on his domicile, which in turn has only two elements. What Plaintiff calls factors are types of evidence that can be used to prove the actual elements of domicile—fixed habitation and intent to remain—if either element is in dispute.") (cleaned up). Johnson's declaration does address two of the relevant factors, both of which support his claim of Nevada citizenship, and Plaintiffs have not come forward with any evidence that contradicts Johnson's declaration or otherwise undermines Johnson's avowal of his intent to remain permanently in Nevada. This absence of contradiction is what ultimately swings the outcome in Lyft's favor. Lyft has provided enough evidence to survive a directed verdict on whether Johnson was a Nevada citizen at the time this action was filed on April 7, 2026. *Lew*, 797 F.2d at 751-52.

Finally, a separate issue that may require further attention is whether Plaintiffs should be allowed to proceed under pseudonyms. Because this case originated in state court, Plaintiffs never sought and obtained permission to proceed as Jane Does, and the general rule in federal court is that the "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings and Rule 10(a)'s command that the title of every complaint include the names of all the parties." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (cleaned up). With that said, "many federal courts, including the Ninth Circuit, have permitted parties to proceed anonymously when special circumstances justify secrecy." *Id.* One circumstance in which "courts have permitted plaintiffs to use pseudonyms" is "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature." *Id.* at 1068 (cleaned up). *See also* Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1409 (2022) ("Many cases allow people who allege they were sexually assaulted to be pseudonymous . . . . But again, many other decisions hold otherwise . . . .").

In the past, the Court has required parties seeking to proceed under pseudonyms to file a motion requesting permission to do so. But the Court is also aware there is a pending

motion to transfer this action to the existing federal multidistrict litigation ("MDL") in *In re: Lyft, Inc. Passenger Sexual Assault Litigation*, MDL No. 3171, with a panel hearing set for September 24, 2026. The Court will thus refrain, for the time being, from requiring any further steps regarding the pseudonymity issue.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to remand (Doc. 9) is **denied**.

Dated this 27th day of August, 2026.

Dominic W. Lanza
United States District Judge